STATE OF CONNECTICUT *v.* DAVID A. PALANGIO
(8610)

O'CONNELL, NORCOTT and LANDAU, Js.

Argued November 6, 1990—decision released March 26, 1991

*Thomas K. McDonough,* special public defender, for the appellant (defendant).

*Paul J. Ferencek,* deputy assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Corinne L. Klatt,* assistant state's attorney, for the appellee (state).

LANDAU, J. After consolidation of two separate proceedings, the state, in a substitute information, charged the defendant with three counts of risk of injury to, or impairing the morals of, children in violation of General Statutes § 53-21.[1] The defendant entered pleas of not guilty and the jury found him guilty of all three counts. On appeal, the defendant claims that General Statutes § 53-21 is unconstitutionally vague and overbroad as applied to him and that the trial court improperly denied his motion to suppress. We affirm the judgment of the trial court.

The following facts are pertinent to this appeal. On several occasions between September and December of 1985, the three victims, friends of the defendant's son, were guests of the defendant at his apartment. During these visits, the defendant took numerous photographs of the victims in provocative poses in various stages of undress and in differing types of clothing and undergarments. The defendant told the victims that these photographs would comprise their modeling portfolios. He supplied them with the clothing in the photographs and some of the photographs were taken in his bedroom and on his bed. The defendant also had the victims take photographs of him nude or seminude.

---

[1] "[General Statutes] Sec. 53-21. INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

In December, 1985, the police searched the defendant's apartment pursuant to a search warrant for stolen property in connection with a burglary investigation involving the defendant's son. Among the items to be seized were cameras and film. The police seized the defendant's undeveloped film containing the victims' photographs. The defendant subsequently asked the police for the return of his film. The police developed the film in order to ensure that the film did not belong to one of the burglary victims, gave the developed photographs to the defendant, and retained the negatives because they suspected that the females in the photographs were children and that a crime had been committed.

In September, 1987, the police received a complaint from the department of children and youth services (DCYS) alleging that the defendant was engaging in child abuse. Pursuant to that allegation, the police executed a search warrant for items including pornographic photographs of male and female adults and children, cameras and flash equipment and developed and undeveloped film. As a result of the DCYS complaint, the police identified one of the victims. Through that girl's father, the police learned the identities of the other two victims. The defendant was charged with one count of risk of injury to a child on November 26, 1987, and with two additional counts on December 18, 1987.

I

The defendant challenges the constitutionality of General Statutes § 53-21 by asserting that the statute, as applied to him, is vague and overbroad.

"In order to surmount a vagueness challenge, 'a statute [must] afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited.' *McKinney* v. *Coventry*, 176 Conn. 613, 618,

410 A.2d 453 (1979). The constitutional requirement of definiteness applies more strictly to penal laws than to statutes that exact civil penalties. *Winters* v. *New York,* 333 U.S. 507, 515, 68 S. Ct. 665, 92 L. Ed. 840 (1948). . . . Furthermore, a facially vague law may nonetheless comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards. *Bishop* v. *Kelly,* 206 Conn. 608, 613, 539 A.2d 108 (1988)." *State* v. *Schriver,* 207 Conn. 456, 460–61, 542 A.2d 686 (1988). A penal statute may survive a vagueness attack solely on a consideration of whether it provides fair warning. *State* v. *Pickering,* 180 Conn. 54, 61, 428 A.2d 322 (1980). We must, therefore, review prior case law to determine whether the defendant had fair warning that taking photographs of partially clothed minors violates § 53-21.

General Statutes § 53-21 proscribes two general types of behavior: "(1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963). In the first of these categories, it is not necessary, nor have the courts required, that a defendant touch any part of the victim's body to violate § 53-21; "the creation of a prohibited situation is sufficient." *State* v. *Perruccio,* 192 Conn. 154, 159–60, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984); see, e.g., *State* v. *Tyler-Barcomb,* 197 Conn. 666, 500 A.2d 1324 (1985), cert. denied, 475 U.S. 1109, 106 S. Ct. 1518, 89 L. Ed. 2d 916 (1986) (the defendant knew that her daughter was being sexually abused); *State* v. *Williams,* 18 Conn. App. 477, 558 A.2d 1026, cert. denied, 212 Conn. 809, 564 A.2d 1071 (1989) (the defendant fired a gun into a house in which there were

children). In addition, prior judicial decisions have specifically concluded that the photographing of a nude or seminude minor is a violation of § 53-21. *State* v. *Hauck,* 172 Conn. 140, 374 A.2d 150 (1976) (the defendant took nude and seminude photographs of the victim after promising to give her a grade of "C" in her science class); *State* v. *Manluccia,* 2 Conn. App. 333, 478 A.2d 1035, cert. denied, 194 Conn. 806, 482 A.2d 711 (1984) (the defendant took photographs of the nude victim after telling him that he was going to sell them). These decisions, therefore, have provided the defendant with fair notice that he need not physically touch a child to violate § 53-21 and that the photographing of nude and seminude children is prohibited. The statute as applied to the defendant is not void for vagueness.

The defendant also claims that § 53-21 is overbroad and that his conduct constitutes protected free expression under the first amendment to the United States constitution. "The essence of an overbreadth challenge is that a statute that proscribes certain conduct, even though it may have some permissible applications, sweeps within its proscription conduct protected by the first amendment." (Citations omitted.) *State* v. *Proto,* 203 Conn. 682, 707, 526 A.2d 1297 (1987). When conduct, and not merely speech is involved, "the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep." *Broadrick* v. *Oklahoma,* 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973); see also *Husti* v. *Zuckerman Property Enterprises, Ltd.,* 199 Conn. 575, 508 A.2d 735, appeal dismissed, 479 U.S. 802, 107 S. Ct. 43, 93 L. Ed. 2d 373 (1986).

It is indisputable that protecting the physical and psychological well-being of children is a compelling, as well as legitimate, state interest. *Globe Newspaper Co.* v. *Superior Court,* 457 U.S. 596, 609, 102 S. Ct. 2613,

73 L. Ed. 2d 248 (1982); *State* v. *Jarzbek,* 204 Conn. 683, 701, 529 A.2d 1245 (1987), cert. denied, 484 U.S. 1061, 108 S. Ct. 1017, 98 L. Ed. 2d 982 (1988). The first part of § 53-21 focuses on a defendant's deliberate indifference to, acquiescence in, or the creation of, situations inimical to the child's moral or physical welfare. Thus, it is the defendant's creation of the situation in which children were posed in various stages of undress and in various types of clothing that is prohibited. Although the defendant couches his claim in first amendment terminology, the fact that he also took photographs of these children is incidental to the situation he created. Even if the defendant had properly raised a first amendment claim, "[i]t rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." *Giboney* v. *Empire Storage Co.,* 336 U.S. 490, 498, 69 S. Ct. 684, 93 L. Ed. 834 (1949).

## II

The defendant also challenges the trial court's denial of his motion to suppress the photographs. The defendant asserts that the photographs were seized on the basis of knowledge derived from the 1985 seizure. He further asserts that their seizure was outside the scope of the 1985 search warrant and therefore illegal under the 1987 search warrant. On appeal, the defendant specifically claims that the trial court improperly found that the officers executed both warrants in good faith. Although the defendant properly notes that the Connecticut constitution does not authorize a good faith exception to the exclusionary rule; *State* v. *Morrissey,* 216 Conn. 185, 187–88, 577 A.2d 1060 (1990); a review of the trial court's decision reveals that the officers' good faith reliance was but one basis for the decision.

In rendering the decision on the motion to suppress, the court stated that "[a]fter an evidentiary hearing and upon review, we defer to the judgments of the two issuing magistrates and are not persuaded by the claim of infirmity directed by the defendant to either warrant. Additionally, we find in and conclude in each instance that the officers executing these warrants, acted in good faith, and their reliance upon the warrants was objectively reasonable." When reviewing whether probable cause to search exists, the reviewing court considers the information that was actually before the issuing judge at the time he or she signed the warrant. *Aguilar* v. *Texas,* 378 U.S. 108, 109 n.1, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *State* v. *Shifflett,* 199 Conn. 718, 746–47, 508 A.2d 748 (1986). The trial court, therefore, properly based its decision on the evidence presented at the suppression hearing, including the fact that the 1987 search warrant was the result of a DCYS complaint.

Even if the 1985 seizure of the photographs were found to have been illegal, the inclusion of information derived from the 1985 search in the 1987 search warrant application does not necessarily render the resulting warrant invalid. *State* v. *Arpin,* 188 Conn. 183, 190, 448 A.2d 1334 (1982). Under the independent source rule, evidence seized pursuant to an affidavit and warrant containing tainted allegations is admissible, if, after excising the illegal information, the affidavit sufficiently supports a finding of probable cause. Id., 190–93. " 'In reviewing an affidavit for a search and seizure warrant we must ascertain whether the facts in the affidavit are sufficient to justify an independent determination by a neutral and detached issuing judge that the necessary probable cause exists for the issuance of the warrant.' . . . " (Citations omitted.) Id., 193. Thus, because the DCYS complaint constituted an independent source sufficient to establish probable

cause, we conclude that probable cause did exist and that the court's denial of the motion to suppress was proper.

The judgment is affirmed.

In this opinion the other judges concurred.