[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The Defendant was charged by arrest warrant with Risk Of Injury To A Minor, in violation of Connecticut General Statutes (hereinafter "C.G.S.") 53-21. By motion dated May 27, 1992, the Defendant moved to dismiss the charge against him.[1] On that same day he also filed a Motion for Bill of Particulars seeking specific information regarding the Risk Of Injury To A Minor violation. The State has not responded to the Defendant's Motion for Bill of Particulars and has chosen not to file a response to the defendant's Motion to Dismiss. Instead, the State has requested, and stipulated with the defense, that the Court decide the instant motion based upon the papers, which include the defendant's pleadings, the arrest warrant affidavit, and the Manchester Police Department Report pertaining to the present case.
Having considered the entire record of this case, the Court finds the defendant's motion to be without merit. Accordingly, for the reasons which follow herein, the defendant's Motion To Dismiss is denied.
FACTS
The parties have stipulated that for purposes of the instant motion, the following facts may be accepted as true.
Approximately 2 1/2 years ago, the defendant, an old friend the twelve year-old victim's father, started visiting the victim's family. Some time in May 1991, the defendant took the victim and her ten year-old sister to an antique show. The trip was the defendant's idea and was consented to by the victim's father. During the ride home, while the victim's sister was CT Page 2186-A asleep in the back seat and the victim was seated next to him, the defendant reached over and placed his hand above the victim's knee. After leaving his hand on the victim's leg for a few minutes, the defendant asked the victim whether having his hand there made her feel uncomfortable. When the defendant told him that it did, the defendant removed his hand from the victim's leg.
In December 1991, sometime after Christmas, the defendant telephoned the victim and invited her to a baseball card store in Massachusetts. Believing that the defendant would not try anything, the victim agreed to the trip. During the ride up and back, the defendant placed his hand on the victim's leg several times. Each time the victim jerked her leg away but the defendant placed his hand back on her leg several minutes later. While his hand was on the victim's leg, the defendant stated to the victim, "You know how I feel about you," and that he liked more than as a friend. During the same ride, the defendant shared to the victim "Can I ask you something, but you can't tell your parents about it?" When the victim responded that then he should not ask her, the defendant said, "OK, I appreciate your honesty, but it had something to do with earning money." The victim did not respond to the defendant's statement.
On February 29, 1992, the defendant invited the victim to his house to sort baseball cards. The defendant picked up the victim in his car. During the ride to his home, the defendant stated to the victim, "You know how I feel about you, right?" The victim responded that she did. The defendant then stated, "I could offer you what I consider a good deal of money, fifty dollars, for some intimate photographs of you." When the victim refused the defendant's offer, he said, "O.K.," and asked the victim if she was mad at him. The victim shook her head. They continued on to the defendant's home and no similar incidents occurred that day.
On March 5, 1992, at the urging of her best friend, the victim informed her parents about the February 29th incident and the defendant's behavior.
On March 10, 1992, the victim's ten year-old sister provided a sworn statement to the Manchester Police Department relating that some time in 1991 she had been playing chess with the defendant at his home. While playing the game, the CT Page 2186-B defendant reached over and placed his hand on her leg, above the knee. The victim's sister stated that she felt uncomfortable, pulled her leg away, and asked the defendant to take her home. Thereafter, she avoided the defendant when he visited the house.
By warrant issued by the Court (Schimelman, J.) on April 7, 1992, the defendant was arrested and charged with one count of Risk of Injury to a Minor, in violation of C.G.S. 53-21.
DISCUSSION
The defendant contends that the charges against him should be dismissed because C.G.S. 53-21 is "both vague and overbroad face, and vague as specifically applied in his case," Memorandum In Support of Defendant's Motion To Dismiss, p. 1.
A motion to dismiss which challenges the constitutionality a statute is properly made prior to trial. Connecticut Practice Book 815. The facts of the case must be viewed in the light most favorable to the state. State v. Patterson,213 Conn. 708, 717, 570 A.2d 174 (1990), quoting State v. Morrill,193 Conn. 602, 611, 478 A.2d 994 (1984). The instant motion, therefore, is timely filed.
The defendant's first claim is that the Risk Of Injury statute is vague and overbroad on its face because it interferes with a constitutionally protected"activity, that is, speech. The defendant contends that the entire case against him is based on his purported offer of money to the minor victim for some "intimate" photographs of her and his response of "okay" when the minor declined his offer. According to the defendant, therefore, the entire offense consists of speech, implicating both the United States and Connecticut Constitutions free speech provisions.[2] The defendant's claims to the contrary notwithstanding, however, the facts of this case are limited to speech. As the recitation of facts reflects, the defendants did more than merely speak to the victim minor.
When reviewing a statute, every presumption is to be given in favor of upholding its constitutionality. Zapata v. Burns,207 Conn. 496, 507, 542 A.2d 700 (1988), citing New Milford v. SCA Services of Connecticut, Inc., 174 Conn. 146, 148,384 A.2d 337 (1977). "[L]egislative enactments carry with them a strong presumption of constitutionality, and . . . a party challenging CT Page 2186-C the constitutionality of a validly enacted statute bears the heavy burden of proving the statute unconstitutional beyond a reasonable doubt." Beccia v. Waterbury, 192 Conn. 127, 133,470 A.2d 1202 (1984); Accord, State v. Hernandez, 204 Conn. 377, 385,528 A.2d 794 (1987).
In State v. Pickering, 180 Conn. 54, 428 A.2d 322 (1980), Connecticut Supreme Court set forth the basic principles to be considered when a statute is attacked on void for vagueness grounds. Firstly, the constitutionality of the statute is to be determined by its applicability to the particular facts at issue. Id., at 57. "[T]hat a statutory provision may be ok questionable applicability in speculative situations is usually immaterial if the challenged provision applies to the conduct of the defendant in the case at issue." Id., at 58. Secondly, as a matter of due process, the statute must give fair warning, that is, be sufficiently definite, to enable a person to know what conduct to avoid. Id., at 59-60. "[A] penal statute may survive a vagueness attack solely upon a consideration of whether it provides fair warning." Accord, State v. Schriver,207 Conn. 456, 459-461, 542 A.2d 686 (1988); State v. Perruccio,192 Conn. 154, 158-159, 471 A.2d 632, appeal dismissed, 469 U.S. 801
(1984); State v. Erzen, 29 Conn. App. 591, 593-594, ___ A.2d ___ (1992).
"If the meaning of a statute can be fairly ascertained a statute will not be void for vagueness since [m]any statutes will have some inherent vagueness, for [i]n most English words and phrases there lurk uncertainties." (Internal quotations citations omitted.) State v. Pickering,180 Conn. at 62. "References to judicial opinions involving the statute, the common law, legal dictionaries, or treatises may be necessary to ascertain a statute's meaning to determine if it gives fair warning." Id., at 62-63, citing Rose v. Locke, 423 U.S. 48, 50,96 S.Ct. 243, 46 L.Ed.2d 185 (1975). Fair warning also may be ascertained by reviewing prior case law to see whether it gives the defendant fair warning that his conduct violated Section53-21 and to the Penal Code because C.G.S. 53a-2 provides that "the provisions of this title shall apply to any offense defined in this title or the general statutes, unless otherwise expressly provided or unless the context otherwise requires. . . ." State v. Erzen, 29 Conn. App. at 594. Additionally, "[w]e also look to see whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding." Id. CT Page 2186-D
General Statutes 53-21 provides:
 Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both.
General Statutes 53-21 proscribes two general types of conduct: "(1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." State v. Erzen, 29 Conn. App. at 594 [quoting State v. Dennis,150 Conn. 245, 250, 188 A.2d 65 (1963)]. See also, State v. Palangio, 24 Conn. App. 300, 303, 588 A.2d 644 (1991).
In the instant case, since the the State has nor responded to the defendant's Motion for Bill of Particulars, the Court must examine both ways of violating Section 53-21 to determine whether the defendant should prevail on his Motion to Dismiss. Having reviewed the facts of this case, the Court finds that the prosecution could not proceed with respect to the second type of conduct prohibited by Section 53-21. The Connecticut Supreme Court has construed "acts directly perpetrated on the minor and injurious to his moral . . . well-being" to be limited to the deliberate touching of the intimate or private parts of a minor. State v. Schriver, 192 Conn. at 160. "Intimate parts" is defined as "the genital area, groin, anus, inner thighs, buttocks or breasts." General Statutes 53a-65 (8); State v. Perruccio, 192 Conn. at 159-160. Since the defendant in the present case did not touch the victim's genital area, anus, thighs, buttocks or breasts, his conduct was not the type of lewd behavior constituting the second type of conduct prohibited by Section 53-21.
Given the totality of circumstances in the present case, however, the defendant's conduct does fall within the first category of behavior proscribed by Section 53-21, in that a jury may reasonably find that he exhibited deliberate indifference to, acquiesed [acquiesced] in, or created a situation inimical to CT Page 2186-E the twelve year-old victim girl's moral or physical welfare. Moreover, the statute is not vague or overbroad as applied to the defendant because judicial decisions gave him fair warning that his pattern of conduct, including the repeated unwanted touching of the twelve year old girl's leg above the knee over a nine month period of time, telling her that he liked her more than as a friend, and offering to give her money if she allowed him to take "intimate" photographs of her was prohibited by C.G.S.53-21.
For instance, in State v. Tirado, the appellate court upheld the conviction off a defendant charged with violating the first prong of 53-21 where the evidence showed that the defendant impaired the morals of a child by kissing the victim, exposing himself to her, and requesting her to engage in sexual contact. State v. Tirado, 21 Conn. App. 449, 450, 574 A.2d 252
(1990). "In Tirado, [the appellate court] made it abundantly clear that the kissing of the victim was not intended to be the sole basis for the conviction, but rather was part of a pattern of sexual conduct." State v. Erzen, 29 Conn. App. at 595. In State v. Erzen, the defendant lured some children into a secluded area, asked them to open the zipper of his pants, and when they refused, he proceeded to open the zipper himself and touch his penis. Id., at 592-93. The exposure and request to open his zipper was "seen as both a request for and step towards sexual conduct." Id., at 596. It was the pattern of lewd and sexual conduct that clearly demonstrated that the defendant violated General Statutes 53-21. Id.
Moreover, the defendant had fair warning from prior court decisions that photographing nude or semi-nude children is prohibited. In State v. Palangio, the defendant was convicted of risk of injury to a minor for photographing three minors in "provocative poses in various stages of undress and in differing types of clothing and undergarments." State v. Palangio,24 Conn. App. at 30. The court held that previous court decisions involving the photographing of nude or semi-nude children "provided the defendant with fair notice that he need not physically touch a child to violate 53-21 and the photographing of nude and seminude children is prohibited." Id., at 304. See also, State v. Hauck, 172 Conn. 140, 374 A.2d 150 (1976) (the defendant was convicted under 53-21 for taking nude and seminude photographs of the victim after promising to give her a grade of "C" in her science class); State v. Manluccia,2 Conn. App. 333, 478 A.2d 1035, cert. denied, 194 Conn. 806, CT Page 2186-F482 A.2d 711 (1984) (the defendant was convicted under 53-21
for taking photographs of the nude victim after telling him he was going to sell them).
Additionally, General Statutes 53a-196b, which criminalizes promoting a minor in an obscene performance, provided the defendant with notice that taking photograpahs [photographs] of a seminude child is illegal. In State v. Parsons, the defendant, in addition to sexually assaulting two children, took photographs of one of the children clothed only in a t-shirt and focused primarily on her buttocks. State v. Parsons, 28 Conn. App. 91, 94-95, ___ A.2d ___ (1992). The appellate court, relying on the photographic evidence, upheld the defendant's conviction for promoting a minor in an obscene performance. Id., at 92. The defendant's convictions for other offenses, including two counts of risk of injury to a child which encompassed the acts constituting the six sexual assault counts plus prior uncharged sexual encounters, were also upheld, Id., at 98.
In the instant case, while he did not actually take the photographs of the victim, the defendant attempted to do so. Pursuant to C.G.S. 53a-49, an attempt to commit a crime is punishable as well. Since the defendant attempted to take "intimate" photographs of the victim, it can be inferred that he was referring to photographs depicting the twelve year-old girl's "genital area, groin, anus, inner thighs, buttocks or breasts, as defined by C.G.S 53a-65 (8). As discussed earlier, "[i]t is clear from 53a-2 that this . . . definition of `intimate parts' is to apply not only to the sections of the penal code pertaining to sexual offenses but to all sections of the general statutes pertaining to such offenses including53-21." State v. Perruccio, 192 Conn. at 160.
Lastly, viewing the sum total of the defendant's behavior toward this young child over a period of approximately nine months, a person of ordinary intelligence would reasonably know, by the use of common sense and ordinary understanding that his actions were prohibited. The defendant's own statements reflect that his touching of the victim's leg was wrong and involved illicit activity. For instance, after the first time the defendant placed his hand on the victim's leg above the knee, the defendant asked the young girl whether his hand there made her feel uncomfortable and he asked her if she was mad at him. He removed his hand from her leg only after she told him that it did make her feel uncomfortable. It is apparent that the CT Page 2186-G defendant's touching of the victim's leg was not accidental, but an intentional act intended for illicit gratification by the defendant.
Moreover, while the victim told him that she felt uncomfortable when he touched her leg, the defendant continued to touch her on numerous occasions, and each time she jerked her leg away. While he had his hand on her leg, the defendant told the victim, "you know how I feel about you" and that he liked her more than as a friend. These statements by the defendant, a 41 year old man at the time, to a 12 year old-girl can only be reasonably interpreted as sexual in nature and illicit. Furthermore, when he told the victim that she could not tell her parents about what he was going to ask her, which concerned earning money, he was aware that what he was going to request of her was improper. Ultimately he did ask her the question he did not want her to tell her parents about, that was, that he would pay her $50 for "intimate" photographs of her. It defies credulity that given the totality of the defendant's conduct and statements to the twelve year-old victim, the defendant could suggest that he did not know that his conduct was illegal. Accordingly, the court finds that the defendant's behavior could reasonably be found by a jury to constitute conduct likely to impair the health and morals of this child victim.
The defendant also contends that 53-21 is vague and overbroad on its face because it interferes with his constitutionally protected freedom of speech. The defendant's claim, however, is without merit.
When First Amendment rights such as free speech are at issue, a statute's constitutionality is tested for vagueness on its face. State v. Pickering, 180 Conn. at 57-58 n. 3. Grayned v. Rockford, 408 U.S. 104, 108-109 (1972). "[V]ague laws may cause citizens to avoid constitutionally protected conduct for fear of incurring criminal prosecution." State v. Proto,203 Conn. 682, 696, 526 A.2d 1297 (1987), citing Buckley v. Valeo,424 U.S. 1, 41 n. 48, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976); Baggett v. Bullitt, 377 U.S. 360, 372, 84 S.Ct. 1316,12 L.Ed.2d 377 (1964).
According to the Connecticut Supreme Court:
 [an] inquiry into the facial validity of a statute focuses on whether indefiniteness in the meaning of CT Page 2186-H the statute could reasonably create uncertainty over, whether the statute prohibits expression that is protected by the first amendment. Such ambiguity is unconstitutional for two reasons: (1) it may deter individuals from exercising their first amendment freedoms for fear of incurring criminal liability; and (2) it vests enforcement officials with undue discretion to interfere with the right to freedom of speech.
(Citations omitted.) State v. Cavallo, 200 Conn. 664, 671,513 A.2d 646 (1986). A statute that is under attack is carefully scrutinized to determine whether its language, as construed, reasonably warrants such uncertainty among members of the public. Id.
However, when conduct and not merely speech is involved, the overbreadth of a statute must be real and substantial and judged in relation to the statute's legitimate proscriptions. Share v. Palangio, 24 Conn. App. at 304. "It is indisputable that protecting the physical and psychological well-being of children is a compelling, as well as legitimate, state interest." Id. Furthermore, "[i]t rarely has been suggested that the constitutional freedom for speech and press extends its immunity to speech or writing used as an integral part of conduct in violation of a valid criminal statute." Giboney v. Empire Storage Co., 336 U.S. 490, 498 (1949). Accord, R.A.V. v. City of St. Paul, ___ U.S. ___, 112 S.Ct. 2538, 2546 (1992).
As is evident from the foregoing recitation of the facts at issue in the instant case, the defendant is being prosecuted not only for what he said to the victim minor, but for creating a situation likely to impair her health and morals, which included his unwanted touchings of her leg, as well as his offer to pay her $50 for some "intimate photographs" of her. Hence, since the present case involves a pattern of conduct in violation of a criminal statute intended to protect the well-being of children, this Court finds that prosecution under 53-21 does not unconstitutionally impinge upon the defendant's right to free speech.
CONCLUSION
Viewing the evidence in the light most favorable to the State, this Court finds that the defendant has failed to sustain CT Page 2186-I his heavy burden of demonstrating that C.G.S. 53-21, the Risk of Injury statute, is unconstitutional as applied to the facts of his case. Section 53-21 is not void for vagueness grounds because the statute, judicial decisions, the alleged conduct itself and common sense, give the defendant fair notice that his pattern of conduct, including the touching of a twelve year-old girl's leg above the knee repeatedly, requesting "intimate" photographs of her for $50 and making sexually suggestive comments to her was prohibited by the first prong of the statute. Additionally, since the defendant's conduct was not limited to speech, but included a pattern of prohibited acts, C.G.S. 53-21 is not facially vague and overbroad in this case and does not violate the defendant's constitutionally protected right to speech.
Accordingly, for all the foregoing reasons the defendant's Motion to Dismiss is denied.
IT IS SO ORDERED.
Dated at Hartford, Connecticut, this 15th day of March, 1993.
BY THE COURT,
Carmen E. Espinosa, J.