[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON MOTION TO DISMISS
On August 7, 2001, the petitioners, Carol R. and the Bristol Probate Court, jointly filed an application for removal of guardian. On the same date, the Bristol Probate Court also filed an application for court initiated removal of guardianship. The petitioners seek to remove the respondents, Brenda W. and David W., as guardians of their minor child, David W., Jr. The petitioners filed their applications in the Bristol Probate Court.
The case was subsequently transferred to this court. On January 7, 2002, the respondents filed a motion to dismiss the applications to remove them as guardians and a memorandum in support thereof. The respondents contend that the applications are governed by General Statutes § 45a-614 and that the motion to dismiss should be granted because neither petitioner has standing to bring such an application or because the portion of the statute that confers standing on one of the petitioners is unconstitutional.
 DISCUSSION
"The motion to dismiss shall be used to assert . . . lack of jurisdiction over the subject matter. . . ." Practice Book § 10-31
(a). The issue of the petitioners' standing to bring the applications implicates the court's subject matter jurisdiction. In re Jonathan M.,255 Conn. 208, 217, 764 A.2d 739 (2001). See also Steeneck v. Universityof Bridgeport, 235 Conn. 572, 579, 668 A.2d 688 (1995). "In ruling upon whether a complaint survives a motion to dismiss, a court must take the facts to be those alleged in the complaint, including those facts necessarily implied from the allegations, construing them in a manner most favorable to the pleader." Pamela B. v. Ment, 244 Conn. 296, 308,709 A.2d 1089 (1998). "The motion to dismiss . . . admits all facts which CT Page 5883 are well pleaded, invokes the existing record and [generally] must be decided upon that alone." (Internal quotation marks omitted.) Barde v.Board of Trustees, 207 Conn. 59, 62, 539 A.2d 1000 (1988).
"Standing is the legal right to set judicial machinery in motion." (Internal quotation marks omitted.) Weidenbacher v. Duclos, 234 Conn. 51,62, 661 A.2d 988 (1995). "[W]hen standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue and not whether the controversy is otherwise justiciable, or whether, on the merits, the [party] has a legally protected interest [which may be remedied]." (Internal quotation marks omitted.) In re Jonathan M., supra, 255 Conn. 219 "[W]here a statute . . . sets prerequisites to suit by a particular plaintiff, a plaintiff not meeting the statutory criteria lacks standing and the court is said to lack jurisdiction over the case." (Internal quotation marks omitted.) Pinchbeck v. Dept. of Public Health, 65 Conn. App. 201, 206,782 A.2d 242, cert. denied, 258 Conn. 928, 783 A.2d 1029 (2001).
The petitioners' applications are governed by General Statutes §45a-614. Section 45a-614 provides: "The following persons may apply to the court of probate for the district in which the minor resides for the removal as guardian of one or both parents of the minor: (1) Any adult relative of the minor, including those by blood or marriage; (2) the court on its own motion; or (3) counsel for the minor." The respondents contend that neither petitioner meets the statutory criteria.
In the application for court initiated removal of guardianship, the petitioner is listed as the Bristol Probate Court and the application is signed by the clerk of that court. In the joint application, both Rosenquist and the Bristol Probate Court are listed as petitioners, and the application is signed by the court's clerk and by Carol R. Carol R.'s status is stated as "friend." Pursuant to the plain language of the § 45a-614, the Probate Court appears to have standing to bring an application for the removal of the respondents as guardian of David W. Jr., but Carol R. does not. Therefore, the respondents' motion to dismiss the joint application for removal of guardian as it pertains to Carol R. is granted.
The respondents contend that the Probate Court does not have the "power" to bring an application for removal of guardian on its own motion under § 45a-614 unless the parties are already before the court on an ancillary matter. They raise two arguments in support of this contention. First, the respondents assert that the term "the court on its own motion" is a term of art that indicates that a court may bring an action in a matter that is already presently before it. Second. they assert that permitting a court to initiate a proceeding on its own would CT Page 5884 violate the due process clause of both the state and federal constitutions.
As to the respondents' first argument, "[i]t is well established that courts of probate are statutory tribunals that have no common-law jurisdiction. . . . Accordingly, they can exercise only such powers as are conferred on them by statute. . . . They have jurisdiction only when the facts exist on which the legislature has conditioned the exercise of their power. . . . [A] court which exercises a limited and statutory jurisdiction is without jurisdiction to act unless it does so under the precise circumstances and in the manner particularly prescribed by the enabling legislation. . . . Ordinarily, therefore, whether a Probate Court has jurisdiction to enter a given order depends upon the interpretation of a statute.
"Chapter 801a of the General Statutes outlines the jurisdiction and powers of probate courts. In addition to various powers regarding will and estates, probate courts are provided with the authority to `make lawful orders or decrees to carry into effect the power and jurisdiction conferred upon them by the laws of this state.' General Statutes [45a-98
(a)(7)]." (Citations omitted; internal quotation marks omitted.) In reMichaela Lee R., 253 Conn. 570, 580-81, 756 A.2d 214 (2000).
The respondents' first argument requires the court to discern the intent of the applicable statute. As stated above, § 45a-614 provides that "the court on its own motion," may apply for the removal of parents as guardians for a minor child. In interpreting a statute, the court's "fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . and that statutes are to be interpreted with regard to other relevant statutes because the legislature is presumed to have created a consistent body of law." (Internal quotation marks omitted.) In re Michaela Lee R., supra, 253 Conn. 583.
The language of the statute does not expressly limit the probate court's power to initiate an application for removal of guardian to cases that are already pending before it. In several other related statutes, the legislature has used the same term, but has expressly provided that the court's authority to bring a motion applies to cases already pending before it. For example, General Statutes § 46b-150a (c), which applies to minors' petitions for emancipation, provides, in pertinent CT Page 5885 part: "Upon finding at the hearing or any time during the pendency of the proceeding in the Probate Court, that reasonable cause exists to warrant an examination, the court on its own motion or on motion of any party, may order the minor to be examined at a suitable place by a physician, psychiatrist or licensed psychologist appointed by the court." General Statutes § 46b-54, which applies to proceedings for dissolution of marriage, provides, in pertinent part: "The court may appoint counsel for any minor child or children of either or both parties at any time after the return day of a complaint under section 46b-45, if the court deems it to be in the best interests of the child or children. The court may appoint counsel on its own motion, or at the request of either of the parties or of the legal guardian off any child. . . ."
On the other hand, in other related statutes, the legislature has also used the term without expressly limiting the court's authority to bring its own motion to cases already pending before it. For example, General Statues § 45a-616 (a) provides, in pertinent part: "If any minor has no parent or guardian of his or her person, the court of probate for the district in which the minor resides may, on its own motion, appoint a guardian or co-guardians of the person of the minor, taking into consideration the standards provided in section 45a-617. . . ." General Statutes § 45a-670, which applies to applications for guardianship of mentally disabled person, provides, in relevant part: "An application for guardianship may be filed by the court on its own motion of by any adult person. . . ."
Therefore, when the legislature intends to limit a court's power to bring its own motion to cases that are already pending before it, it generally uses language that makes its intent clear. Moreover, the respondents do not contend that the others who have the authority to bring an application for removal of guardian are also subject to the same limitation. If the legislature intended to impose the limitation only on the probate courts, it would have worded the statute so that this intent would be clear.
In addition, the legislative history of the statute does not support the respondents' interpretation of it. The portion of General Statutes § 45a-614 that provides that the court may bring an application on its own motion was added by No. 79-460 of the 1979 Public Acts. At the same time, in section 6 of Public Act 79-460, the legislature added a provision, now codified at General Statutes § 45a-615, that provides that any person who wilfully files a false or malicious application for removal of a guardian shall be fined or imprisoned. According to the legislative history, one of the intentions of the act was to expand the categories of petitioners who can initiate an action for removal of guardianship. As stated by Angela Grant, a staff attorney for the CT Page 5886 Connecticut law revision commission, "[t]he reason Section 6 was added was to sort of counterbalance the effect of enlarging the category of petitioners who can bring action for removal of parent as guardians. Previously it was extremely limited and left the Probate Court in the situation of having noone to bring these actions when it was required. So the category has now been expanded to include relatives, [the court] on its own motion and attorney for the child." Conn. Joint Standing Committee Hearings, Judiciary, Pt. 5, 1979 Session, p. 1516. Thus, the legislature was apparently concerned with providing the probate courts with the authority to initiate actions to aid minors where no one else has authority to do so.
The Probate Court has standing to bring the application to terminate the respondents as guardians and its standing is not limited to pending cases. The respondents' motion to dismiss the Probate Court's application on the basis of lack of standing is denied.
The respondents' second assertion is that General Statutes § 45a-614, to the extent that it provides authority for a court of probate to initiate an application for removal of guardian without limiting its right to do so to pending cases, violates their rights to due process under the state and federal constitution[1]. The respondents base this assertion on their rights to an impartial and independent judiciary. "No more elementary statement concerning the judiciary can be made than that the conduct of the trial judge must be characterized by the highest degree of impartiality. . . . A judge is not an umpire in a forensic encounter. . . . In whatever he does . . . the trial judge should be cautious and circumspect in his language and conduct. A judge should be scrupulous to refrain from hearing matters which he feels he cannot approach in the utmost spirit of fairness and to avoid the appearance of prejudice as regards either the parties of the issues before him." (Internal quotation marks omitted.) Cameron v. Cameron, 187 Conn. 163,168-69, 444 A.2d 915 (1982).
"The Due Process Clause entitles a person to an impartial and disinterested tribunal in both civil and criminal cases. . . . The neutrality requirement helps to guarantee that life, liberty, or property will not be taken on the basis of an erroneous or distorted conception of the facts or the law. . . . At the same time, it preserves both the appearance and reality of fairness, generating the feeling, so important to a popular government, that justice has been done . . . by ensuring that no person will be deprived of his interests in the absence of a proceeding in which he may present his case with assurance that the arbiter is not predisposed to find against him." (Citations omitted; internal quotation marks omitted.) Marshall v. Jerrico, Inc., 446 U.S. 238,242, 100 S.Ct. 1580, 64 L.Ed.2d 182 (1980). CT Page 5887
The Supreme Court has also held, however, that "not all questions of judicial qualification . . . involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest, would seem generally to be matters merely of legislative discretion. . . . As Blackstone put it, `the law will not suppose a possibility of bias or favor in a judge, who is already sworn to administer impartial justice, and whose authority greatly depends upon that presumption and idea.' 3 W. Blackstone, Commentaries 361. . . . The more recent trend has been towards the adoption of statutes that permit disqualification for bias or prejudice." (Citations omitted; internal quotation marks omitted.) Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820,106 S.Ct. 1580, 89 L.Ed.2d 823 (1986).
Connecticut has adopted several procedures to help guarantee the impartiality of the judiciary. Specifically, "Canon 3(c)(1) of the Code of Judicial Conduct requires a judge to disqualify himself in any proceeding in which judicial impartiality might reasonably be doubted."[2]
(Internal quotation marks omitted.) Ford v. Ford, 52 Conn. App. 522,527, 727 A.2d 254 (1999). Practice Book § 1-22(a) provides, in pertinent part: "A judicial authority shall, upon motion of either party or upon its own motion, be disqualified from acting in a matter if such judicial authority is disqualified from acting therein pursuant to Canon 3(c) of the Code of Judicial Conduct. . . ." In addition, General Statutes § 45a-623 provides, in pertinent part: "In any proceeding under sections 45a-603 to 45a-622, inclusive, that is contested, the Court of Probate shall, upon motion of any party other than a party who made application for the removal of a parent as a guardian, under rules adopted by the judges of the Supreme Court, transfer the case to the Superior Court. In addition to the provisions of the section, the Court of Probate may, on the court's own motion or that of any interested party, transfer the case to another judge of probate, which judge shall be appointed by the Probate Court Administrator from a panel of qualified probate judges who specialize in children's matters. . . ." A party who questions the impartiality of a probate court judge who has initiated an application for removal of guardian may protect the right to be heard by a neutral judge by invoking these procedures.
On the other hand, the Connecticut Supreme Court has recognized "that a parent's interest in the care, custody and control over his or her children is perhaps one of the oldest of the fundamental liberty interests recognized by [the Supreme] Court. . . ." Roth v. Weston,259 Conn. 202, 218, 789 A.2d 431 (2002). In Roth v. Weston, the court considered the issue of the standards that should be imposed on application by a third party for visitation brought pursuant to General Statutes § 46b-59. Previously, in Castagno v. Wholean, 239 Conn. 336, CT Page 5888684 A.2d 1181 (1996), the Supreme Court had "incorporated a threshold jurisdictional requirement into § 46b-59 that would permit the trial court to entertain a petition for visitation only when the family life of the minor child had been [already been] disrupted either by state intervention analogous to the situations included within §§ 46b-56 and46b-57 or in a manner similar to that addressed by §§ 46b-56 and 46b-57, but in which the courts have not yet become involved." (Internal quotation marks omitted.). Roth v. Weston, supra, 259 Conn. 215-16. The court determined that, in light of the decision of the United States Supreme Court in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054,147 L.Ed.2d 49 (2000), the threshold requirement it had imposed on § 46b-59
was not sufficient to allow the statute to withstand a constitutional challenge because it "does not adequately acknowledge the status of parents' interest in the care, custody and control of their children, as perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." Roth v. Weston, supra, 259 Conn. 216.
Statutes that infringe on a parent's fundamental liberty interests must be strictly scrutinized. Id., 218. In that light, this court shall assume that the portion of § 45-614 under challenge involves a constitutional issue, and will, thus, examine whether the statutory provision is narrowly tailored to achieve a compelling state interest. Id.
The purpose of the statute is to confer standing on three classes of person to bring an application for removal of parents as guardian of a minor. "Where fundamental rights are implicated, such as in the present case, standing serves a function beyond a mere jurisdictional prerequisite. It also ensures that the statutory scheme is narrowly tailored so that a person's personal affairs are not needlessly intruded upon and interrupted by the trauma of litigation. . . . Consequently, consistent with our strict scrutiny analysis, we conclude that the standing requirements [of the statute] must be drawn narrowly." Id., 219. In Roth v. Weston, in addressing the question of standing under General Statutes § 46b-59, the court held that a third party seeking visitation with a child pursuant to that statute "must allege and establish a parent-like relationship as a jurisdictional threshold in order both to pass constitutional muster and to be consistent with the legislative intent." Id., 222.
Such a narrow requirement is not warranted in regard to General Statutes § 45a-614 for several reasons. First, the issue of whether a court could initiate an application for visitation on its own was not at issue in Roth v. Weston and thus the decision did not address that issue. Second, as noted in its legislative history, one of the purposes of the statute is to provide the probate courts with standing to bring CT Page 5889 applications for removal of guardian when no one else is available to do so. Third, the purpose of § 45a-614 is to confer standing and not to determine who should or should not be a child's guardian.
When considered in conjunction with General Statutes §§ 45a-609 and45a-610, General Statutes § 45a-614 is narrowly tailored because it requires that the parents be given notice and a hearing and only permits the court to grant such an application if the court finds by clear and convincing evidence, that the parent has consented or abandoned the child, the parent's conduct has jeopardized the "physical, educational, moral or emotional well-being"of the child, or the child has been found to be neglected or uncared for.[3]
As to the question of whether the statutory provision under examination seeks to achieve a compelling state interest, our Supreme Court has recognized that limitations on parental rights may be imposed "out of an appreciation of the state's long recognized interests as parens patriae."Roth v. Weston, supra, 259 Conn. 224. Furthermore, "[i]t is undisputable that protecting the physical and psychological well-being of children is a compelling, as well as a legitimate, state interest." State v.Palangio, 24 Conn. App. 300, 304, 588 A.2d 644, cert. denied,218 Conn. 911, 591 A.2d 813 (1991); see also In re Shane P.,58 Conn. App. 244, 260, 754 A.2d 169 (2000).
Finally, "[l]egislative enactments carry with them a strong presumption of constitutionality, and a party challenging the constitutionality of a validly enacted statute bears the weighty burden of proving unconstitutionality beyond a reasonable doubt . . . In analyzing the constitutionality of a statute, the court will read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it." (Citations omitted; internal quotation marks omitted.) In reShane P., supra, 58 Conn. App. 254.
The respondents have not shown that General Statutes § 45a-614 is unconstitutional to the extent that it confers standing on the probate courts to initiate an application for removal of parents as guardians when no action is pending. Accordingly, the respondents' motion to dismiss the petitioners' applications on this ground is denied.
Tanzer, J