## STATE OF CONNECTICUT *v.* VINCENT ERZEN (10858)

O'CONNELL, LANDAU and HEIMAN, Js.

Argued October 1—decision released December 1, 1992

*James P. Ginocchio,* assistant public defender, for the appellant (defendant).

*Mary H. Lesser,* assistant state's attorney, with whom, on the brief, were *Eugene J. Callahan,* state's attorney, and *Robert Katz,* assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant appeals from the judgment of conviction, rendered after a trial to the court, of two counts of risk of injury to a child in violation of General Statutes § 53-21.[1] The defendant claims that

---

[1] General Statutes § 53-21 provides: "INJURY OR RISK OF INJURY TO, OR IMPAIRING MORALS OF, CHILDREN. Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely

§ 53-21 as applied to the facts of this case is so vague and indefinite as to violate the due process provisions of article first, § 8, of the Connecticut constitution and the fourteenth amendment to the United States constitution. We disagree.

The trial court could reasonably have found the following facts. On Saturday, May 18, 1991, P took her eight year old daughter, C, and her daughter's eight year old friend, E, to the playground located at Weston Elementary School. While C and E were riding their bicycles in front of the school building, the defendant approached them and requested their help in looking for "his lost puppy." He asked C and E to go around the right side of the building while he went around the left side. The children followed the defendant's directions and they all met in a small alcove at the rear of the building.

Once at the rear of the building, the defendant asked C if she knew how to "unzip his zipper." C, knowing that the defendant meant the zipper on his trousers, said, "No." He then asked C to unzip his zipper and the child again replied, "No." Directing himself to E, the defendant inquired whether she knew how to unzip a zipper. E also knew that the defendant was speaking of the zipper on his trousers and made no reply. The defendant then opened his zipper, exposed his penis, and asked the children to stand guard. Both C and E saw the defendant "pat" or "tap" his penis with a tissue. During this time, the defendant asked the children if anyone was coming. The defendant did not ask the children to touch his penis, nor did he touch the children. C then said that she was going to leave and the defendant asked her to stay. C was afraid to leave because she thought the defendant might grab her or

to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

hit her. The children heard C's mother calling to them and they ran to her. Both children were agitated and upset and, upon being questioned by P, told her what had occurred.

P, who had previously walked to the back of the building looking for the children, asked a woman to look after them and looked toward where the girls indicated the event had occurred. She saw the defendant walking from the alcove zipping up his pants. She ran after him and questioned his presence and his actions. The defendant falsely identified himself as Joe, a worker at the school, and said, "Leave me alone or I'll have to hit you." He then gestured with his open hand towards P's face, stopping about six inches from it. She stopped following the defendant at this point and reported the episode to the police.

At the time the defendant exposed himself to the children, he was wearing glasses, a plaid shirt, a baseball cap, and had a bandage on his chin. When the defendant was arrested he was wearing glasses, a white T-shirt, a baseball cap, had a bandage on his chin, and was carrying a plaid shirt. At the police station, the defendant removed the bandage from his chin and flushed it down the toilet. The policeman who arrested the defendant observed that there was nothing on the defendant's chin that would require a bandage. The defendant was convicted of both counts of risk of injury to a child. On appeal, the defendant challenges the constitutionality of General Statutes § 53-21 by asserting that the statute, as applied to him, is vague and lacks specificity.

"In order to surmount a vagueness challenge, a statute must afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited. *McKinney* v. *Coventry,* 176 Conn. 613, 618, 410 A.2d 453 (1979)." (Internal quotation marks omit-

ted.) *State* v. *Palangio,* 24 Conn. App. 300, 302–303, 588 A.2d 644, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991). "The constitutional requirement of definiteness applies more strictly to penal laws than to statutes that exact civil penalties. *Winters* v. *New York,* 333 U.S. 507, 515, 68 S. Ct. 665, 92 L. Ed. 2d 840 (1948). . . . Furthermore, a facially vague law may nonetheless comport with due process if prior judicial decisions have provided the necessary fair warning and ascertainable enforcement standards. *Bishop* v. *Kelly,* 206 Conn. 608, 613, 539 A.2d 108 (1988)." (Citations omitted.) *State* v. *Schriver,* 207 Conn. 456, 460–61, 542 A.2d 686 (1988). A penal statute may survive a vagueness attack solely on a consideration of whether it provides fair warning. *State* v. *Pickering,* 180 Conn. 54, 61, 428 A.2d 322 (1980). A determination of fair warning is ascertained in several ways. We review prior case law to determine whether the defendant had fair warning that his acts violated § 53-21; we look to the penal code for guidance because General Statutes § 53a-2 provides that "[t]he provisions of this title shall apply to any offense defined in this title or the general statutes, unless otherwise expressly provided or unless the context otherwise requires . . . ." We also look to see whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding.

Section § 53-21 proscribes two general types of behavior: "(1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being." (Citation omitted.) *State* v. *Dennis,* 150 Conn. 245, 250, 188 A.2d 65 (1963). It is this first prong of the statute that the defendant challenges. Under this prong, it is not necessary, nor have the courts required, that a defendant touch any part

of the victim's body to violate § 53-21. Rather, the creation of a prohibited situation is sufficient to breach the statute. *State* v. *Perruccio,* 192 Conn. 154, 159–60, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984). Section 53-21 does not specify the "situations" deemed likely to impair the morals of a child. Id., 160. An examination of prior judicial decisions and other penal statutes, and common sense show, however, that the defendant had fair warning that this situation would impair the morals of a minor.

In *State* v. *Tirado,* 21 Conn. App. 449, 574 A.2d 252 (1990), we upheld the conviction of a defendant charged with violating the first prong of § 53-21 where the evidence showed that the defendant impaired the morals of a child by kissing the victim, exposing himself to her and requesting her to engage in sexual contact.[2] In *Tirado,* we made it abundantly clear that the kissing of the victim was not intended to be the sole basis for the conviction, but rather was part of a pattern of sexual conduct. That pattern, we held, also included the defendant's exposing himself to the victim and requesting her to engage in sexual contact with him. Here, the defendant, using a ploy, placed two children in a similar situation. He lured them into a secluded area, asked them to stand guard, asked them to open his zipper and, when they refused, proceeded to open his zipper himself and touch his penis. Although he did not touch the children, he did expose himself, and the request to open

---

[2] In *State* v. *Tirado,* 21 Conn. App. 449, 574 A.2d 252 (1990), the defendant was also accused of masturbating in the presence of the victim. Masturbation is defined in General Statutes § 53a-193 (h), which deals with obscenity as to minors, as "the real or simulated touching, rubbing or otherwise stimulating a person's own clothed or unclothed genitals . . . ." In the case before us, the defendant was described as "patting" or "tapping" his penis in front of the children. The trial court could have drawn an inference that the defendant was masturbating in front of the children.

his zipper is easily seen as both a request for and a step towards sexual contact. It is this pattern of lewd and sexual conduct that clearly demonstrates that the defendant violated § 53-21.

The defendant relies on *State* v. *Schriver,* supra, to support his claim. The defendant's reliance is misplaced. The defendant in *Schriver* was charged with violating the second prong of § 53-21; Erzen is charged with violating the first prong. The defendant in *Schriver* did not expose himself to the victim, nor did the defendant deliberately touch the private parts of the victim. The court held that because there was no deliberate touching of the private parts of a child, which is the standard furnished in *State* v. *Pickering,* supra, for the violation of the second prong of § 53-21, the defendant's conviction could not stand. The court did state, however, in obiter dictum, that "[u]nder different circumstances, the state might elect to prosecute under the first part of § 53-21, which proscribes the . . . . creation of situations inimical to the minor's moral or physical welfare . . . . A defendant need not physically touch a minor in order to violate [the first prong] of § 53-21." (Citation omitted; internal quotation marks omitted.) *State* v. *Schriver,* supra, 467. The defendant in this case did not physically touch the victims. The defendant did, however, expose and touch his penis in the presence of these children. By his actions in the children's presence, he created a situation inimical to the children's moral welfare. Such actions are violative of the first prong of § 53-21.

The defendant, citing *State* v. *Hauck,* 172 Conn. 140, 374 A.2d 150 (1976), places great emphasis on the fact that his actions were both isolated and momentary in nature. In *Hauck,* the defendant, a high school science teacher, was charged with violating § 53-21 after photographing the victim in nude and seminude poses in exchange for a passing grade in his science course.

These photographic sessions occurred repeatedly over the course of the school year. The defendant argues that, unlike in *Hauck*, his actions were isolated in nature and, therefore, it is not likely that they impaired the morals of C and E. The court in *Hauck*, however, did not address the number or continuity of the occurrences in that case in light of the violation of § 53-21, but rather decided the case on evidentiary grounds. We decline to set out a bright line rule requiring a specific or minimum number of occurrences before a person can be charged with impairing the morals of a minor. In a particular situation, one instance is enough.[3] Our case law provides a judicial gloss and gives the defendant fair warning that his actions were violative of the statute.

It is axiomatic that we interpret statutes, where possible, to create a consistent body of law. *State* v. *Schriver*, supra, 463 n.4; *State* v. *Kozlowski*, 199 Conn. 667, 677–78, 509 A.2d 20 (1986); and we "recognize the desirability of reconciling the scope of § 53-21 with similar provisions of the penal code. See General Statutes § 53a-2." *State* v. *Schriver*, supra. Therefore, we look to comparable statutes to determine the reach of the challenged statute. *Grayned* v. *Rockford*, 408 U.S. 104, 109–110, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972). The public indecency statute, General Statutes § 53a-186,[4] is instructive as to what behavior is likely to impair the morals of a minor. Section 53a-186 prohibits lewd exposure of the body in a public place with intent to arouse or to satisfy the sexual desire of the person. Cases sustaining convictions under this stat-

---

[3] See, e.g., *State* v. *Thomas*, 19 Conn. App. 44, 47, 560 A.2d 486 (1989).

[4] General Statutes § 53a-186 provides in pertinent part: "PUBLIC INDECENCY: CLASS B MISDEMEANOR. (a) A person who performs any of the following acts in a public place is guilty of public indecency . . . (2) a lewd exposure of the body with intent to arouse or to satisfy the sexual desire of the person . . . ."

ute inform the person of average intelligence that the conduct of the defendant in this case is offensive to morality and decency.

In *State* v. *Cruz*, 18 Conn. App. 482, 559 A.2d 231 (1989), we affirmed the defendant's conviction of violating § 53a-186. The defendant, while operating his automobile, cut in front of a woman walking along the road. He asked the woman to come to his car and, when she refused, he pulled alongside her; at that point the victim saw that the defendant's pants were around his knees and he was masturbating. The act of exposing oneself and masturbating is prohibited. In *State* v. *Vega*, 38 Conn. Sup. 313, 314–15, 444 A.2d 927 (1982),[5] the victim was alighting from her car when she heard a loud knocking and observed the defendant standing at the window of his apartment. The defendant, naked and visible from the knees up, was holding his penis and smiling. The court upheld his conviction under § 53a-186 for " 'a lewd exposure of the body with the intent to arouse or to satisfy the sexual desire of the person.' " Id., 315.

In *State* v. *Sousa*, 2 Conn. Cir. Ct. 452, 201 A.2d 664 (1964),[6] the defendant was convicted of exposing his genitals and masturbating in the view of the complainant and her daughter.[7] The court stated that "[i]ndecent exposure is the intentional or negligent indecent exposure of the private parts of the person to the public view. . . . Indecent exposure of person

---

[5] This case was decided in the Appellate Session of the Superior Court. While this is not a constitutional court and we are not bound by its decision; *State* v. *Johnson*, 28 Conn. App. 708, 716 n.5, 613 A.2d 1344 (1992); we find that it is illustrative of the type of conduct that is likely to impair the morals of a child. It, too, provides the defendant with fair warning that his actions are violative of the statute.

[6] See footnote 5, supra.

[7] The defendant in *State* v. *Sousa*, 2 Conn. Cir. Ct. 452, 201 A.2d 664 (1964), was charged with violating General Statutes (1958 Rev.) § 53-220 entitled Indecent Exposure, the predecessor to § 53a-186.

is a criminal offense at common law, and also by virtue of statutory provision in many jurisdictions. . . . The common sense of the community, as well as the sense of decency, propriety and morality, which most people entertain, is sufficient to apply the statute to each particular case, and point out what particular conduct is rendered criminal by it." (Citations omitted; internal quotation marks omitted.) Id., 454. It is clear that exposing oneself to a child is an act that is "likely to impair the morals" of that child. General Statutes §§ 53-21 and 53a-186, and the cases that have construed these statutes, give fair notice that this defendant's conduct violated the criminal law and was offensive to morals. Any person of average intelligence would know that when a man lures children to a secluded area, asks them to unzip his trousers, exposes himself to them, and touches his penis in front of them, he is creating a situation likely to impair their morals and his actions are within the purview of the risk of injury statute.

The defendant's actions, in themselves, lead us to no other conclusion than that he knew what he was doing was prohibited. When he lured the children to the secluded area, he asked them if anyone was coming and asked them to act as guards. After the children ran, the defendant himself fled and, when approached by P., falsely identified himself and threatened her. He also made efforts to change his appearance both at the scene and at the police station after his arrest. These efforts clearly demonstrate the defendant's knowledge of the criminality of his actions.

The defendant also argues that the statute delegates too much discretion to law enforcement agencies because state's attorneys could take public indecency cases and prosecute them under the risk of injury statute and thus increase the penalty from six months to ten years. This presents no constitutional problem. *United States* v. *Batchelder,* 442 U.S. 115, 127–28, 99

S. Ct. 2198, 60 L. Ed. 2d 755 (1979); *State* v. *Grullon,* 212 Conn. 195, 217, 562 A.2d 481 (1989); *State* v. *Chetcuti,* 173 Conn. 165, 168, 377 A.2d 263 (1977). The state has broad discretion to choose which crimes to charge in particular circumstances and as long as the state does not discriminate against any class, the state may choose to prosecute a defendant under either applicable statute. *State* v. *Chetcuti,* supra. Again, where a defendant, as in this case, lures the children away from a public area to a secluded section and asks them to participate in this type of conduct, he is guilty of more than public indecency.

The defendant had fair notice that the conduct in which he engaged would subject him to the penalties of the risk of injury statute and thus has not met his heavy burden of demonstrating that, as applied to his case, General Statutes § 53-21 is unconstitutional.

The judgment is affirmed.

In this opinion the other judges concurred.