STATE OF CONNECTICUT v. SAMUEL GEORGE
(12119)

LANDAU, SPEAR and HENNESSY, Js.

---

[8] See footnote 7.
[9] See footnote 7.
[10] See footnote 5.

Argued November 30, 1994—decision released March 28, 1995

*Todd A. Edgington,* assistant public defender, for the appellant (defendant).

*Marjorie Allen Dauster,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Edward Wilson,* assistant state's attorney, for the appellee (state).

HENNESSY, J. The defendant appeals from the judgment of conviction, following a jury trial, of risk of injury to a child in violation of General Statutes § 53-21.[1] The defendant claims that the risk of injury statute is unconstitutionally vague as applied to the facts of this case. We disagree and affirm the judgment of the trial court.

The jury could reasonably have found the following facts. On November 15, 1991, at approximately 5:40 p.m., Officer Ellen Stoldt of the East Hartford police responded to a report that an infant had been left in a car in a parking lot. She discovered a seventeen

---

[1] General Statutes § 53-21 provides: "Any person who wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that its life or limb is endangered, or its health is likely to be injured, or its morals likely to be impaired, or does any act likely to impair the health or morals of any such child, shall be fined not more than five hundred dollars or imprisoned not more than ten years or both."

month old infant in a car and, when the defendant returned to the car, Stoldt learned that the child was his and warned him not to leave his child unattended because he could be subject to arrest. Later that evening, between 8 and 9 p.m., Stoldt responded to a call that an infant had been left in a car in the parking lot at a bar in East Hartford. Upon arriving at the bar, Stoldt found the car empty and questioned the defendant as to where his child was. The defendant said that his child was at home. Stoldt asked if anyone was with the child, and the defendant said no. Stoldt dispatched other police officers to the defendant's apartment and, when they found the child unattended, Stoldt arrested the defendant.

" 'In order to surmount a vagueness challenge, a statute must afford a person of ordinary intelligence a reasonable opportunity to know what is permitted or prohibited.' " *State* v. *Erzen,* 29 Conn. App. 591, 593, 617 A.2d 177 (1992); see also *State* v. *Pickering,* 180 Conn. 54, 60, 428 A.2d 322 (1980); *State* v. *Jones,* 29 Conn. App. 683, 687, 617 A.2d 918 (1992). Although the constitutional requirement of definiteness applies more strictly to penal laws than to statutes that exact civil penalties, "[a] penal statute may survive a vagueness attack solely on a consideration of whether it provides fair warning."[2] *State* v. *Erzen,* supra, 594, citing *State* v. *Pickering,* supra, 61. Even if the language of a statute fails to provide definite notice, fair warning can be provided by prior judicial opinions involving the statute; *State* v. *Pickering,* supra, 62–63; *State* v. *Palan-*

---

[2] Because the defendant's sole claim on appeal is that the statute was unconstitutionally vague in application to the facts of this case, we need not consider the argument in his brief that § 53-21 fails to establish minimal guidelines to govern law enforcement. Although the guarantee against standardless law enforcement is a component of the void for vagueness doctrine, it is only a relevant inquiry when a statute is challenged as *facially* void for vagueness. *State* v. *Pickering,* supra, 180 Conn. 57; *State* v. *Erzen,* supra, 29 Conn. App. 593–94; *State* v. *Palangio,* 24 Conn. 300, 303, 588 A.2d 644, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991).

*gio*, 24 Conn. App. 300, 303, 588 A.2d 644, cert. denied, 218 Conn. 911, 591 A.2d 813 (1991); or by an examination of "whether a person of ordinary intelligence would reasonably know what acts are permitted or prohibited by the use of his common sense and ordinary understanding." *State* v. *Erzen*, supra, 594.

"Section 53-21 proscribes 'two general types of behavior . . . (1) deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . and (2) acts directly perpetrated on the person of the minor and injurious to his moral or physical well-being.' (Citations omitted.)" *State* v. *Jones*, supra, 29 Conn. App. 687, quoting *State* v. *Dennis*, 150 Conn. 245, 250, 188 A.2d 65 (1963). The defendant was convicted under the first prong of this statute. Under this prong " 'the creation of a prohibited situation is sufficient' " to trigger criminal liability. *State* v. *Palangio*, supra, 24 Conn. App. 303, quoting *State* v. *Perruccio*, 192 Conn. 154, 159–60, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984).

Here, the defendant had fair warning that his conduct was proscribed by law. Approximately three hours before he was arrested, the defendant was warned by a police officer that leaving his child unattended could result in his arrest. Despite this actual notice that leaving his child unattended could lead to criminal consequences, the defendant left his child unsupervised later that same evening.[3] It seems particularly audacious for

---

[3] The defendant's actual awareness that he was creating a situation inimical to the welfare of his child is further evidenced by the attempts the defendant made to lessen the possibility for harm by storing several shotguns, shells, and other dangerous instrumentalities in the child's crib, where the child could not gain access, and fastening certain kitchen cabinets with child-proof latches.

the defendant to claim a lack of fair warning that his conduct was criminal in these circumstances.

The judgment is affirmed.

In this opinion the other judges concurred.