******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* YURY G.*
(AC 43069)

Alvord, Clark and Sullivan, Js.

*Syllabus*

Convicted, after a jury trial, of the crime of disorderly conduct stemming from a physical altercation with her husband, the defendant appealed to this court. She claimed, inter alia, that the trial court improperly determined that her request to instruct the jury on the infraction of creating a public disturbance as a lesser included offense failed to satisfy the test set forth in *State* v. *Whistnant* (179 Conn. 576). *Held*:

1. The trial court properly denied the defendant's request for an instruction on the lesser included offense of creating a public disturbance; the defendant's request failed under the fourth prong of the *Whistnant* test, as the evidence showing that the defendant intentionally hit her husband with her knee would have supported a conviction under either the greater or the lesser offense and, thus, the jury could not, as a matter of law, have found the defendant guilty only of creating a public disturbance and not guilty of disorderly conduct.

2. The defendant could not prevail on her unpreserved claim that the statutory scheme that gave the prosecutor complete discretion in choosing whether to charge her with an infraction or with a misdemeanor that contained identical elements to the infraction violated her state and federal constitutional rights to due process of law and equal protection under the law; our Supreme Court held in *State* v. *Harden* (175 Conn. 315) that a trial court should not give a lesser included offense instruction when both the greater and lesser offenses contain only identical elements, and the United States Supreme Court held in *United States* v. *Batchelder* (442 U.S. 114) that, if there is no discrimination against any particular class of defendants when deciding under what statute to charge a defendant, there is no violation under the federal constitution for two statutes with different penalties to punish the same conduct, thus, the defendant failed to establish her claimed constitutional violations and her claim was not reviewable under the third prong of *State* v. *Golding* (213 Conn. 233).

3. The defendant could not prevail on her unpreserved claim that the statutory scheme that gave the prosecutor complete discretion in choosing whether to charge her with an infraction or with a misdemeanor that contained identical elements to the infraction violated the separation of powers provision of the Connecticut constitution by shifting power from the judiciary to the executive branch; our legal precedent has held that, in Connecticut, the power of sentencing is shared by all three branches of government, thus, the defendant failed to establish her claimed constitutional violation, and her claim was not reviewable under the third prong of *Golding*.

4. The defendant could not prevail on her claim that the trial court abused its discretion in instructing the jury that it could consider her husband's affidavit, which had been admitted as a full exhibit, only for impeachment purposes; although the defendant failed to comply with the rules of practice by directing her requests to charge to particular evidence in the case, and she never requested that the court provide an instruction pursuant to *State* v. *Whelan* (200 Conn. 743) regarding the affidavit or asked the court specifically to instruct the jury that it could use the affidavit for substantive purposes, a review of the court's charge in its entirety revealed that the court never instructed the jury that it was limited in its use of the affidavit but instead instructed it to consider all of the testimony and exhibits admitted into evidence in reaching its verdict.

Argued May 13—officially released September 21, 2021

*Procedural History*

Information charging the defendant with one count of the crime of disorderly conduct, brought to the Superior

Court in the judicial district of Ansonia-Milford, geographical area number twenty-two, and tried to the jury before *Wilkerson-Brillant, J.*; verdict and judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*David C. Nielsen*, former certified legal intern, with whom was *James B. Streeto*, senior assistant public defender, for the appellant (defendant).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *Margaret E. Kelley*, state's attorney, *Alexander C. Beck*, assistant state's attorney, and *Leeza N. Tirado*, certified legal intern, for the appellee (state).

*Opinion*

ALVORD, J. The defendant, Yury G., appeals from the judgment of conviction, rendered following a jury trial, of disorderly conduct in violation of General Statutes § 53a-182 (a) (1). On appeal, the defendant claims: (1) the trial court incorrectly determined that the defendant's request to charge the jury on the "lesser included offense" of creating a public disturbance, an infraction, failed to meet the test articulated in *State* v. *Whistnant*, 179 Conn. 576, 588, 427 A.2d 414 (1980); (2) the statutory scheme that gives the prosecutor complete discretion in choosing whether to charge the defendant with an infraction or with a misdemeanor that contains identical elements to the infraction violates her state and federal constitutional right to due process of law and to equal protection under the law; (3) the statutory scheme that gives the prosecutor complete discretion in choosing whether to charge the defendant with an infraction or with a misdemeanor that contains identical elements to the infraction violates the separation of powers provision of the Connecticut constitution; and (4) the court abused its discretion when it instructed the jury that it could consider the affidavit of the defendant's husband (H) only for impeachment purposes despite having admitted the affidavit as a full exhibit. We affirm the judgment of the trial court.

The following facts, which reasonably could have been found by the jury, inform our review of the defendant's claims. The defendant and H were married and were the parents of a ten year old daughter. On October 5, 2016, the power company shut off the family's electricity due to nonpayment of their bill. When H came home that evening, the defendant was upset and confronted him. The accounts of what transpired after he returned home conflicted, however. The defendant alleged that H shoved her during the argument, and H alleged that the defendant struck him in the groin with her knee, injuring his testicles, during the argument. It is undisputed, however, that H began to record the events on his phone, and that the defendant telephoned the police. Officer Michael Beutel of the West Haven Police Department arrived at the family's home at 10:17 p.m. The defendant was waiting outside when Beutel arrived, and Beutel took the statements of each party separately. Beutel believed that he had probable cause to arrest both parties.

Relevant to this appeal, the defendant was charged with one count of disorderly conduct, and, following a jury trial, she was found guilty of that charge. After accepting the jury's verdict, the court rendered a judgment of conviction, imposing a total effective sentence of ninety days of incarceration, execution suspended, followed by one year of probation. This appeal followed.

I

The defendant first claims that the trial court incorrectly determined that her request to charge the jury on the "lesser included offense" of creating a public disturbance, an infraction, failed to meet the test articulated in *State* v. *Whistnant*, supra, 179 Conn. 588. The state argues that the defendant's claim fails for two reasons—first, an infraction cannot be a lesser included offense of an actual offense, and, second, the defendant's request to charge fails to satisfy the *Whistnant* test. We conclude that the defendant's request to charge the jury on the infraction of creating a public disturbance, as a "lesser included offense" of disorderly conduct, fails the fourth prong of the *Whistnant* test.[1]

In this case, the defendant submitted to the trial court a request that the jury be instructed on the "lesser included offense" of creating a public disturbance, arguing that the request to charge satisfied the four part test set forth in *Whistnant*. The court denied the request, concluding that the fourth prong of the *Whistnant* test was not satisfied.

"A defendant is entitled to an instruction on a lesser [included] offense if . . . the following conditions are met: (1) an appropriate instruction is requested by either the state or the defendant; (2) it is not possible to commit the greater offense, in the manner described in the information or bill of particulars, without having first committed the lesser; (3) there is some evidence, introduced by either the state or the defendant, or by a combination of their proofs, which justifies conviction of the lesser offense; and (4) the proof on the element or elements which differentiate the lesser offense from the offense charged is sufficiently in dispute to permit the jury consistently to find the defendant [not guilty] of the greater offense but guilty of the lesser. *State* v. *Whistnant*, [supra, 179 Conn. 588]." (Internal quotation marks omitted.) *State* v. *Marsala*, 337 Conn. 55, 65–66, 252 A.3d 349 (2020).

"In considering whether the defendant has satisfied the requirements set forth in *State* v. *Whistnant*, supra, 179 Conn. 588, we view the evidence in the light most favorable to the defendant's request for a charge on the lesser included offense. . . . On appeal, an appellate court must reverse a trial court's failure to give the requested instruction if we cannot as a matter of law exclude [the] possibility that the defendant is guilty only of the lesser offense." (Internal quotation marks omitted.) *State* v. *Corbin*, 260 Conn. 730, 745, 799 A.2d 1056 (2002).

In the present case, the trial court concluded that the defendant's request to charge on the infraction of creating a public disturbance, as a "lesser included offense" of disorderly conduct, failed the fourth prong of *Whistnant*. "[T]he fourth prong of *Whistnant* specifically requires that the proof be sufficiently in dispute.

. . . Such proof is sufficient when it is marked by [a] quality [such as] to meet with the demands, wants or needs of a situation . . . . In the *Whistnant* context, therefore, the proof is sufficiently in dispute [when] it is of such a factual quality that would permit the finder of fact reasonably to find the defendant guilty [of] the lesser included offense. This requirement serves to prevent a jury from capriciously [finding a defendant guilty] on the lesser included offense when the evidence requires either [a finding of guilt] on the greater offense or [a finding of not guilty]. . . . Moreover, the trial court, in making its determination whether the proof is sufficiently in dispute, [although] it must carefully assess all the evidence whatever its source, is not required to put the case to the jury on a basis [of a lesser included offense] that essentially indulges and even encourages speculations as to [a] bizarre reconstruction [of the evidence]." (Citation omitted; internal quotation marks omitted.) *State* v. *Marsala*, supra, 337 Conn. 66–67.

Section 53a-182 provides: "(a) A person is guilty of disorderly conduct when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior; or (2) by offensive or disorderly conduct, annoys or interferes with another person; or (3) makes unreasonable noise; or (4) without lawful authority, disturbs any lawful assembly or meeting of persons; or (5) obstructs vehicular or pedestrian traffic; or (6) congregates with other persons in a public place and refuses to comply with a reasonable official request or order to disperse; or (7) commits simple trespass, as provided in section 53a-110a, and observes, in other than a casual or cursory manner, another person (A) without the knowledge or consent of such other person, (B) while such other person is inside a dwelling, as defined in section 53a-100, and not in plain view, and (C) under circumstances where such other person has a reasonable expectation of privacy.

"(b) Disorderly conduct is a class C misdemeanor."

General Statutes § 53a-181a provides: "(a) A person is guilty of creating a public disturbance when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he (1) engages in fighting or in violent, tumultuous or threatening behavior; or (2) annoys or interferes with another person by offensive conduct; or (3) makes unreasonable noise.

"(b) Creating a public disturbance is an infraction."

In the present case, the defendant was charged under § 53a-182 (a) (1), which required the state to prove that she had "[e]ngage[d] in fighting or in violent, tumultuous or threatening behavior . . . ." Likewise, a charge pursuant to § 53a-181a (a) (1) would have required the

state to prove that that the defendant had "engage[d] in fighting or in violent, tumultuous or threatening behavior . . . ." The evidence to support a conviction under either charge, as set forth in the facts section of this opinion demonstrates that the defendant intentionally hit H in the groin with her knee. Pursuant to the fourth prong of the *Whistnant* test, a request to charge on a greater and lesser offense that contain identical elements and that are premised on the same proof necessarily will fail. See, e.g., *State* v. *Marsala*, supra, 337 Conn. 75 (trial court properly denied defendant's request for instruction of lesser included offense when, on basis of evidence, jury could not have found defendant guilty only of lesser included offense and not of greater offense); *State* v. *Manley*, 195 Conn. 567, 580–81, 489 A.2d 1024 (1985) (trial counsel's rhetorical argument to jury, in absence of any proof at trial, did not place matter of whether defendant's gun could have been starter pistol sufficiently in dispute for purposes of fourth prong of *Whistnant*); *State* v. *Harden*, 175 Conn. 315, 325, 398 A.2d 1169 (1978) (trial court should not give lesser included offense instruction when both greater and lesser offense contain only identical elements);[2] see also *Sansone* v. *United States*, 380 U.S. 343, 349–50, 85 S. Ct. 1004, 13 L. Ed. 2d 882 (1965) ("[A] lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses. . . . In other words, the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater. A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense." (Citations omitted.)).

Accordingly, in light of the evidence introduced at trial and the elements of the "lesser offense" and the greater offense, we can exclude as a matter of law the possibility that the jury rationally could have found the defendant guilty only of creating a public disturbance, and not guilty of disorderly conduct. The trial court, therefore, properly denied the defendant's request for an instruction on the "lesser included offense" because the request failed under the fourth prong of the *Whistnant* test.

## II

The defendant, requesting review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015),[3] next claims that the statutory scheme that gives the prosecutor complete discretion in choosing whether to charge her with an infraction or with a misdemeanor that contains identical elements to the infraction violates her right to due process of law and

equal protection under the law under both the federal and state constitutions. We conclude that this issue is controlled by *State* v. *Harden*, supra, 175 Conn. 325, 325 n.6, and *United States* v. *Batchelder*, 442 U.S. 114, 124–25, 99 S. Ct. 2198, 60 L. Ed. 2d 755 (1979), and that the defendant's claim fails under *Golding*'s third prong.

Whether a statutory scheme violates a defendant's rights to due process of law or to equal protection under the law presents this court with questions of law over which we exercise plenary review. See *State* v. *Collymore*, 334 Conn. 431, 477, 223 A.3d 1, cert. denied,     U.S.    , 141 S. Ct. 433, 208 L. Ed. 2d 129 (2020); *State* v. *Long*, 268 Conn. 508, 520–21, 847 A.2d 862, cert. denied, 543 U.S. 969, 125 S. Ct. 424, 160 L. Ed. 2d 340 (2004). When reviewing such a claim, "[o]ur analysis . . . begins with the premise that a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. . . . The court will indulge in every presumption in favor of the statute's constitutionality . . . . Therefore, [w]hen a question of constitutionality is raised, courts must approach it with caution, examine it with care, and sustain the legislation unless its invalidity is clear." (Citations omitted; internal quotation marks omitted.) *State* v. *Long*, supra, 521.

The defendant argues that a rule like the one set forth in *Harden*, which provides that the trial court should not give a lesser included offense instruction when both the greater and the lesser offense contain only identical elements, "would represent an unconstitutional delegation of sentencing authority to the executive branch and would impermissibly hinder the jury's ability to determine whether the defendant was guilty of the greater crime beyond a reasonable doubt." As we explained in footnote 2 of this opinion, as an intermediate appellate court, we have no authority to overrule decisions of our Supreme Court.[4] Additionally, as also recognized by the defendant, the United States Supreme Court determined long ago that, as long as the government does not discriminate against any particular class of defendants when deciding under what statute to charge a defendant, there is no violation of due process or equal protection under the federal constitution for two statutes with different penalties to prohibit the same conduct. See *United States* v. *Batchelder*, supra, 442 U.S. 124–25. As the Supreme Court explained: "Whether to prosecute and what charge to file . . . are decisions that generally rest in the prosecutor's discretion." Id., 124. Accordingly, we conclude that the defendant's claim fails under the third prong of *Golding*; the defendant has failed to establish her claimed constitutional violations.

III

The defendant also claims that the statutory scheme that gives the prosecutor complete discretion in deciding whether to charge a defendant with an infraction or with a misdemeanor that contains identical elements violates the separation of powers provision of the Connecticut constitution by shifting powers from the judiciary to the executive branch.[5] The defendant again requests *Golding* review. The state argues that the defendant's claim again fails under *Golding*'s third prong because the statutory scheme that assigns different penalties to identical conduct and that gives the prosecutor discretion in deciding under which of these statutes to charge a defendant does not unconstitutionally shift powers from the judiciary to the executive branch. We agree with the state.

"[T]he primary purpose of [the separation of powers] doctrine is to prevent commingling of different powers of government in the same hands. . . . The constitution achieves this purpose by prescribing limitations and duties for each branch that are essential to each branch's independence and performance of assigned powers. . . . It is axiomatic that no branch of government organized under a constitution may exercise any power that is not explicitly bestowed by that constitution or that is not essential to the exercise thereof. . . . [Thus] [t]he separation of powers doctrine serves a dual function: it limits the exercise of power within each branch, yet ensures the independent exercise of that power. . . .

"In the context of challenges to statutes whose constitutional infirmity is claimed to flow from impermissible intrusion upon the judicial power, we have refused to find constitutional impropriety in a statute simply because it affects the judicial function . . . . A statute violates the constitutional mandate for a separate judicial magistracy only if it represents an effort by the legislature to exercise a power which lies exclusively under the control of the courts . . . or if it establishes a significant interference with the orderly conduct of the Superior Court's judicial functions. . . . In accordance with these principles, a two part inquiry has emerged to evaluate the constitutionality of a statute that is alleged to violate separation of powers principles by impermissibly infringing on the judicial authority. . . . A statute will be held unconstitutional on those grounds if: (1) it governs subject matter that not only falls within the judicial power, *but also lies exclusively within judicial control*; or (2) it significantly interferes with the orderly functioning of the Superior Court's judicial role." (Emphasis added; internal quotation marks omitted.) *State* v. *Evans*, 329 Conn. 770, 810, 189 A.3d 1184 (2018), cert. denied,     U.S.    , 139 S. Ct. 1304, 203 L. Ed. 2d 425 (2019).

"[U]nder our state's law, the power of sentencing is a shared power. Although the judiciary exclusively has

the power to render, open, vacate, or modify a judgment, we repeatedly have held that the power to sentence is shared by all three branches of government. See, e.g., *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 828, 950 A.2d 1220 (2008) ('[a]lthough the judiciary unquestionably has power over criminal sentencing . . . the judiciary does not have exclusive authority in that area' . . . ); id. (legislature decides appropriate penalties, judiciary adjudicates and determines sentence, and executive manages parole system); *State* v. *Campbell*, 224 Conn. 168, 178, 617 A.2d 889 (1992) ('sentencing is not within the exclusive control of the judiciary and . . . there is no constitutional requirement that courts be given discretion in imposing sentences'), cert. denied, 508 U.S. 919, 113 S. Ct. 2365, 124 L. Ed. 2d 271 (1993). The judiciary may impose a specific sentence, but the legislature has the power to define crimes, prescribe punishments for crimes, impose mandatory minimum terms of imprisonment for certain crimes, preclude the probation or suspension of a sentence, and even pardon offenders. See *State* v. *Darden*, 171 Conn. 677, 679–80, 372 A.2d 99 (1976) ('the constitution assigns to the legislature the power to enact laws defining crimes and fixing the degree and method of punishment and to the judiciary the power to try offenses under these laws and impose punishment within the limits and according to the methods therein provided'); *State* v. *Morrison*, 39 Conn. App. 632, 634, 665 A.2d 1372 ('Prescribing punishments for crimes . . . is . . . a function of the legislature. . . . The judiciary's power to impose specific types of sentences is therefore defined by the legislature.' . . .), cert. denied, 235 Conn. 939, 668 A.2d 376 (1995) . . . ." (Emphasis omitted.) *State* v. *McCleese*, 333 Conn. 378, 416–17, 215 A.3d 1154 (2019).

In *State* v. *Erzen*, 29 Conn. App. 591, 617 A.2d 177 (1992), the defendant argued that the legislature had delegated too much discretion to law enforcement agencies because it gave the state's attorneys the ability to take crimes, such as public indecency cases, and prosecute them under the risk of injury statute, thereby increasing potential penalties from six months of incarceration to ten years of incarceration. Id., 599–600. This court explained that such a statutory scheme "presents no constitutional problem. . . . The state has broad discretion to choose which crimes to charge in particular circumstances and as long as the state does not discriminate against any class, the state may choose to prosecute a defendant under either applicable statute." (Citations omitted.) Id. Our Supreme Court also has explained that, provided "the state does not avail itself of overlapping criminal statutes in a manner that discriminates against any class, the state may legally choose to prosecute the defendant under either applicable statute. . . . Absent a showing of a selection deliberately based upon an unjustifiable standard such as

race, religion or other arbitrary classification . . . conscious selectivity in enforcement of the law is not in itself a constitutional violation." (Citation omitted; internal quotation marks omitted.) *State* v. *Grullon*, 212 Conn. 195, 217, 562 A.2d 481 (1989).

In the present case, the defendant argues that "where the prosecutor is able to determine which of two duplicative charges a defendant must defend himself against, *he necessarily impedes the judiciary's ability to exercise its power to impose punishment.*" (Emphasis added.) The defendant's argument flatly fails in the face of our legal precedent, which holds that, in Connecticut, the power of sentencing *is a shared power.* See *State* v. *McCleese*, supra, 333 Conn. 416–17 (citing cases to support statement that, under our state's law, power to sentence is shared by all three branches of government). "The fact that certain governmental powers overlap is not only necessary to ensure the smooth and effective operation of government . . . but also is a product of the historical evolution of Connecticut's governmental system, which established a tradition of harmony among the separate branches of government that the separate branches of the federal government system did not have." (Citation omitted; internal quotation marks omitted.) Id., 419.

On the basis of the foregoing, we conclude that the defendant has failed to establish that the statutory scheme that allows the prosecutor to choose under which of two statutes, containing the same elements but different punishments, to charge a defendant violates the separation of powers provision of our state constitution. Accordingly, her claim fails under the third prong of *Golding.*

IV

Lastly, the defendant claims that the trial court abused its discretion when it instructed the jury that it could consider H's affidavit only for impeachment purposes, despite having admitted the affidavit as a full exhibit. She contends that the court should have given the jury an instruction pursuant to *State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86 (jury may find prior statement of witness inconsistent with witness' trial testimony and may give such inconsistent statement whatever weight jury concludes it should be given when determining witness' credibility, and jury may use such statement for truth of its content and may find facts from it), cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

The state argues that "[t]he defendant's claim fails because: (1) it is an unpreserved evidentiary claim; (2) she induced any error by requesting the instruction she now challenges; (3) she implicitly waived any error by failing to object to the trial court's proposed instructions despite having a meaningful opportunity to do so;

and (4) in any event, the instruction was correct." In her reply brief, the defendant responds to the state's argument: (1) there were two different types of inconsistent statements made by H, one consisting of his oral statements and the other, his signed affidavit, (2) the oral statements were not *Whelan* statements, (3) the affidavit was a *Whelan* statement, (4) the defendant was entitled to a *Whelan* instruction regarding the affidavit, and (5) the defendant preserved this issue by submitting a request to charge to the trial court. We are not persuaded by the defendant's claim.

"We begin with the well established standard of review governing the defendant's [challenge] to the trial court's jury instruction. Our review of the defendant's claim requires that we examine the [trial] court's entire charge to determine whether it is reasonably possible that the jury could have been misled by the omission of the requested instruction. . . . While a request to charge that is relevant to the issues in a case and that accurately states the applicable law must be honored, a [trial] court need not tailor its charge to the precise letter of such a request. . . . If a requested charge is in substance given, the [trial] court's failure to give a charge in exact conformance with the words of the request will not constitute a ground for reversal. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . we will not view the instructions as improper. . . . Additionally, we have noted that [a]n [impropriety] in instructions in a criminal case is reversible . . . when it is shown that it is reasonably possible for [improprieties] of constitutional dimension or reasonably probable for nonconstitutional [improprieties] that the jury [was] misled." (Internal quotation marks omitted.) *State* v. *Edwards*, 334 Conn. 688, 716–17, 224 A.3d 504 (2020).

The following additional facts are necessary for our review of the defendant's claim. H signed an affidavit, dated January 2, 2019, that provided in relevant part: "My wife and I were arrested in a dual arrest on October 5, 2016 . . . . I was the primary aggressor but the . . . [p]olice at the time were following protocol and arrested both of us and I engaged my wife and she defended herself. The police stated that they were required to arrest both parties . . . . I accepted responsibility for my actions and I received a conditional discharge. . . . I entered a plea to end the case against me. . . . I would like to withdraw any complaints against my wife and I wish for the charge of disorderly conduct against her to be dropped. . . . The argument was over a high electric bill, the electricity had been shut off and we could have both handled the problem more appropriately." The state introduced H's affidavit as a full exhibit, without objection from the defendant. During his trial testimony, H stated that he had not read the affidavit before signing it and that he had signed it only because the defendant had told him

that she needed it signed in order to get her job back. The defendant attempted to use the affidavit to impeach H during cross-examination and through the testimony of the court service center employee who had typed the affidavit.

The defendant filed a request to charge that was more than sixty pages. In her request to charge, the defendant requested that the court instruct the jury on direct and circumstantial evidence, including instructing that "[t]he evidence from which you are to decide what the facts are consists of: (1) the sworn testimony of witnesses both on direct and cross examination, regardless of who called the witness, [and] (2) the exhibits that have been admitted into evidence . . . . In reaching your verdict, you should consider all the testimony and exhibits admitted into evidence." The defendant also requested, inter alia, an instruction on inconsistent statements of witnesses and an instruction under the *Whelan* rule. Specifically, she submitted verbatim copies of § 2.4-3 of the Connecticut Criminal Jury Instructions, titled "Impeachment—Inconsistent Statements,"[6] and § 2.4-4 of the Connecticut Criminal Jury Instructions, titled "Impeachment—*Whelan* Rule."[7] She did not tie any of these requests to any particular evidence— neither to testimony nor to exhibits. During oral argument before this court, the defendant conceded that her request to charge did not comply with the requirements of our rules of practice.

The trial court conducted its initial charging conference, and it distributed a proposed draft of its jury instructions, stating that it had included some of the defendant's requests. The next morning, the court continued its charging conference, noting the changes that it had made to the proposed draft charge; none of the changes involved *Whelan* or inconsistent statements. Counsel for the defendant and the state engaged in discussions with the court concerning the instructions; none of those discussions concerned *Whelan* or inconsistent statements. The court, thereafter, asked each party whether it had any exceptions, to which both the state and the defendant responded in the negative.

In its final charge to the jury, the court instructed in relevant part: "The evidence . . . from which you are to decide what the facts are consist of the sworn testimony of witnesses both on direct and cross-examination regardless of who called the witness, and the exhibits that have been admitted into evidence. *In reaching your verdict you should consider all the testimony and exhibits admitted into evidence.*" (Emphasis added.)

The court also instructed the jury that it could evaluate a witness' credibility based on, inter alia, whether "the witness' testimony [was] contradicted by what that witness has said or done at another time or by the testimony of other witnesses or by other evidence." Shortly thereafter, as had been requested by the defen-

dant, the court further instructed: "Evidence has been presented that [H] made statements outside of court that may be inconsistent with his trial testimony. You should consider this evidence only as it relates to credibility of the witness' testimony, not as substantive evidence. In other words, consider such evidence as you would any other evidence of inconsistent conduct in determining the weight to be given to the testimony of the witness in court."

Near the end of its instructions to the jury, the court stated: "[A]s I indicated earlier, your verdict must be based on the evidence, and you may not go outside the evidence to find facts. . . . I impress upon you that you are duty bound as jurors to determine the facts on the basis of the evidence as it has been presented." After the court concluded its final instructions to the jury, it asked both the defendant and the state whether they had any comment, and neither voiced any objection to the court's instructions as given.

Practice Book § 42-18 provides: "(a) When there are several requests [to charge the jury in a criminal matter], they shall be in separate and numbered paragraphs, each containing a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the evidence to which the proposition would apply.* Requests to charge should not exceed fifteen in number unless, for good cause shown, the judicial authority permits the filing of an additional number. If the request is granted, the judicial authority shall apply the proposition of law to the facts of the case.

"(b) A principle of law should be stated in but one request and in but one way. Requests attempting to state in different forms the same principle of law as applied to a single issue are improper." (Emphasis added.)

In the present case, the defendant concededly failed to adhere to our rules of practice and did not tie her requested instructions to any particular evidence. After the court provided its proposed instructions to counsel, which included the defendant's specific request that the court provide an instruction pursuant to § 2.4-3 of the Connecticut Criminal Jury Instructions, the defendant voiced no objection to the court's proposed draft instructions.

On the merits of the defendant's claim, we conclude, on the basis of the entirety of the court's jury charge, that, although the defendant claims that the court "instructed the jury to consider [H's] affidavit, a full exhibit, for impeachment purposes only," the court never instructed the jury that it was limited in its use of H's affidavit. Indeed, the court specifically told the jury that it "should consider all the testimony and exhibits admitted into evidence" in reaching its verdict. Additionally, although the court gave the limiting instruction

pursuant to § 2.4-3 of the Connecticut Criminal Jury Instructions that the defendant requested, the defendant readily acknowledges that this instruction was relevant to alleged oral statements made by H. We are not persuaded by the defendant's argument that the instructions given by the court did not specify to the jury that it could use H's affidavit for substantive purposes. The defendant failed to comply with our rules of practice by directing her requests to charge to particular evidence in the case, and she never asked the court to provide a *Whelan* instruction regarding the affidavit.[8] The defendant also never asked the court to single out the affidavit and to tell the jury specifically that it could use the affidavit for substantive purposes. Nevertheless, our review of the charge in its entirety reveals no instance where the court told the jury that it could use H's affidavit only for impeachment purposes. The court clearly instructed the jury that it "should consider all the testimony and exhibits admitted into evidence" in reaching its verdict. Accordingly, we conclude that the defendant's claim has no merit.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of family violence, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[1] Because we agree with the state that the defendant's request to charge fails under *Whistnant*, we need not determine whether an infraction legally can be a lesser included offense of a misdemeanor. As our Supreme Court recently did in *Marsala*, we save this question for another day. See *State* v. *Marsala*, 337 Conn. 55, 57 n.4, 252 A.3d 349 (2020) ("[b]ecause we conclude that the defendant failed to satisfy *Whistnant*, we do not reach the state's alternative ground for affirmance, in which the state contends that the defendant would not have been entitled to an instruction on the infraction . . . even if he had satisfied *Whistnant* because infractions are categorically prohibited from being submitted to the jury as lesser included offenses of crimes").

[2] The defendant also argues that *State* v. *Harden*, supra, 175 Conn. 315, should be overruled because it was wrongly decided. "[I]t is axiomatic that, [a]s an intermediate appellate court, we are bound by Supreme Court precedent and are unable to modify it. . . . [W]e are not at liberty to overrule or discard the decisions of our Supreme Court but are bound by them. . . . [I]t is not within our province to reevaluate or replace those decisions." (Internal quotation marks omitted.) *State* v. *Vasquez*, 194 Conn. App. 831, 839–40, 222 A.3d 1018 (2019), cert. denied, 334 Conn. 922, 223 A.3d 61 (2020).

[3] "Pursuant to *Golding*, a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. . . . *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third prong of *Golding*)." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Silva*, Conn. , n.5, A.3d (2021).

[4] During oral argument before this court, the defendant conceded that she raised this claim under the state constitution in order to preserve the issue for review by our Supreme Court. She also stated in her main appellate brief: "Inasmuch as this court cannot overrule or modify decisions of the Connecticut Supreme Court, the defendant appreciates the futility in bringing this claim before it. Nevertheless, the defendant has chosen to assert the foregoing state constitutional claims in order to preserve them for possible

review by the Connecticut Supreme Court.”

[5] The defendant appears to recognize that her claim fails under the federal constitution. See *United States* v. *Batchelder*, supra, 442 U.S. 126 (“The provisions at issue plainly demarcate the range of penalties that prosecutors and judges may seek and impose. In light of that specificity, the power that Congress has delegated to those officials is no broader than the authority they routinely exercise in enforcing the criminal laws. Having informed the courts, prosecutors, and defendants of the permissible punishment alternatives available under each Title, Congress has fulfilled its duty.”).

[6] Specifically, the request pursuant to § 2.4-3 of the Connecticut Criminal Jury Instructions provides: “Evidence has been presented that a witness, *<insert name of witness>*, made [a] statement[s] outside of court that (is/are) inconsistent with (his/her) trial testimony. You should consider this evidence only as it relates to the credibility of the witness’s testimony, not as substantive evidence. In other words, consider such evidence as you would any other evidence of inconsistent conduct in determining the weight to be given to the testimony of the witness in court. [*<Include if appropriate:>* The law treats an omission in a prior statement as an inconsistent statement.]” (Emphasis in original.) See Connecticut Criminal Jury Instructions, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited September 15, 2021).

[7] Specifically, the request pursuant to § 2.4-4 of the Connecticut Criminal Jury Instructions provides: “In evidence as exhibit [ ] is a prior statement of *<identify witness>*. To the extent, if at all, you find such statement inconsistent with the witness’s trial testimony, you may give such inconsistency the weight to which you feel it is entitled in determining the witness’s credibility here in court. You may also use such statement for the truth of its content and find facts from it.” (Emphasis in original.) See Connecticut Criminal Jury Instructions, available at https://www.jud.ct.gov/JI/Criminal/Criminal.pdf (last visited September 15, 2021).

[8] During oral argument before this court, the state also argued that the affidavit was not admitted as a *Whelan* statement and that *Whelan* has no applicability here. Because we conclude that the court did not limit the jury’s use of the affidavit, we need not address the state’s argument.

———————————————